**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | | |
|---|---|---|
| THE CHURCH AT JACKSON, a Mississippi not for profit corporation, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 3:21-cv-298-HTW-LGI |
| HINDS COUNTY, a county in Mississippi, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S VERIFIED COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES**

Plaintiff, The Church at Jackson, by and through its counsel, and for its Verified Complaint against Defendant Hinds County, brought under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA") and other laws, states as follows:

**NATURE OF THE CASE**

1. On its face, the Zoning Ordinance of Hinds County, Mississippi (the "Ordinance") treats religious assembly uses on less than equal terms with nonreligious assembly uses in violation RLUIPA's "Equal Terms" provision, 42 U.S.C. § 2000cc(b)(1). Specifically, pursuant to Section 501 of the Ordinance, nonreligious assembly uses, like gymnasiums, sports fields, rodeo arenas and other similar nonreligious assembly uses are permitted *as of right* in the Agricultural District (A). Conversely, under Section 502, churches and other religious assembly uses are prohibited in the same zoning district unless they apply for and obtain a conditional use permit. Because the County has imposed these unequal terms to bar the Church from assembling for worship, prayer,

and bible study on its property, which lies in an Agricultural District, this action seeks immediate injunctive and declaratory relief from the Ordinance, as well as damages.

## PARTIES

2. Plaintiff, The Church at Jackson (the "Church"), is organized as a Mississippi nonprofit corporation and owns property in Hinds County, located at 14875 I-55 S. Frontage Rd., Terry, MS 39170 (the "Property"). **Exhibit A**, Declaration of Deacon Gabriel Olivier, at ¶¶ 3-5.

3. Defendant Hinds County is a county in Mississippi that may be sued in its own name under Miss. Code. Ann. § 11-45-17.

## JURISDICTION AND VENUE

4. This action arises under RLUIPA, 42 U.S.C. § 2000cc *et seq.*, and this Court has subject matter jurisdiction over this action by virtue of 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 2201 (declaratory relief); and 18 U.S.C. § 2202 (injunctive relief).

5. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391(b), in that Defendant is situated within this judicial district, Plaintiff is located within this judicial district, all of the events giving rise to the claims asserted by Plaintiff occurred in this judicial district, and the property that is the subject of the action is situated in this judicial district.

6. This Court has personal jurisdiction over Defendant as a county in Mississippi.

## FACTUAL ALLEGATIONS

### *The Church and the Property*

7. The Church has a relatively small congregation of about 12-15 active members. **Exhibit A** at ¶ 7.

8. The Church has sincerely held religious beliefs that compel it and its congregants to assemble together on a regular basis for the preaching of God's word, fellowship, worship, prayer,

and Bible study. The Church's religious mission is to help people from all walks of life pursue and experience a transformational relationship with Jesus. *Id.* at ¶ 8.

9. In May 2020, the Church acquired title to the Property, which currently consists of six acres of vacant land. *Id.* at ¶ 4.

10. The Church now seeks to convert and use the Property for religious assembly in accordance with its sincerely held religious beliefs and its religious mission. *Id.* at ¶¶ 7-9.

11. RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," and specifies that the "*use*, building, *or conversion* of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses *or intends to use the property for that purpose*." 42 U.S.C. § 2000cc-5(7) (emphasis added).

12. Congress also mandated that RLUIPA is to be "construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. § 2000cc-3(g).

***Hinds County's Land Use Regulations***

13. The Hinds County Board of Supervisors is the governing authority charged by law with the authority to adopt and enforce the Ordinance.

14. According to Hinds County, the Property is zoned Agricultural. **Exhibit B**, Minutes for Planning Commission Hearing on November 24, 2020.

15. Sections 501 and 502 of the Ordinance govern which land uses are permitted in an Agricultural District, and on what terms. *See* **Exhibit C**, all relevant excerpts of the Ordinance.

16. The words, phrases and terms used in the Ordinance are defined in Article II (Definitions). **Exhibit C**.

17. According to Section 500, the purpose of the Agricultural District is "to conserve land for agricultural use, to prevent the premature development of land, and to prevent urban and agricultural land use conflicts." **Exhibit C** at p. 38.

18. Despite this purpose statement, Section 501, entitled "*LAND USES PERMITTED*," permits numerous non-agricultural assembly-uses as of right in the Agricultural District. *Id.* at p. 38.

19. Pursuant to Section 501(e), "[p]ublic or private recreational or open space facilities" may locate as of right in an Agricultural District. *Id.* at p. 38.

20. The Ordinance defines "recreational facilities" to include "[p]ublic, quasi-public or private land and improvements designed, maintained, operated, and used for recreational pursuits, including but not limited to gymnasiums, sports fields, parks and playgrounds, rodeo arenas, walking, hiking and bicycle trails, golf courses, racquet court facilities, swimming pools, and other similar facilities." *Id.* at p. 19.

21. Section 501(e) expressly excludes "country clubs and the like which shall be regulated as *public/quasi-public facilities*[.]" *Id.* at p. 38.

22. A "public/quasi-public" facility includes, but is not limited to, "[c]hurches and other religious institutions." *Id.* at p. 9.

23. The Church is therefore not treated as a permitted use in the Agricultural District while several nonreligious assembly uses are permitted there as of right.

24. Instead, for a religious assembly use to locate in an Agricultural District, the religious assembly is required to go through the time, expense, and uncertainty of the County's more restrictive and discretionary conditional use permitting process. *Id.* at Section 502.

25. On its face, the Ordinance does not provide any zoning district wherein a new church can locate *as of right* as a permitted land use. *See* **Exhibit C** generally.

26. Under the Ordinance, a new church, mosque, or synagogue can only apply for a conditional use permit to locate in a zoning district or request that a property be rezoned to a Special Use District 5 to accommodate their religious assembly use. *Id.*

***The Church's Efforts to Obtain Zoning Approval Despite the Unequal Terms***

27. After the Church acquired the Property, the Church obtained a septic permit and a permit for a water well. **Exhibit A** at ¶ 10.

28. However, the Hinds County Planning Department told the Church's representative that the Church must have the Property rezoned from Agricultural to Special Use District 5. *Id.* at ¶ 11.

29. Desiring to comply with the Planning Department's instruction, the Church submitted a rezoning application on October 27, 2020. *Id.* at ¶ 14; **Exhibit D**, Rezoning Application.

30. The Hinds County Planning Commission held a hearing on the Church's application on November 24, 2020. **Exhibit B**, Minutes of November 24, 2020 Planning Commission Hearing.

31. During the November 24 hearing, several individuals opposed the Church's application. **Exhibit A** at ¶ 16.

32. Those in opposition made unsubstantiated claims that the Church would decrease property values, threaten the safety of the families and children and, if approved, lead to an influx of commercial business. One person went as far as raising an issue about the fact that the Church is not affiliated with a denomination. *Id.* at ¶ 17.

33. Based on this opposition, and without more, the Planning Commission voted 6-1 to deny the Church's rezoning application. The Planning Commission did not make any of the requisite findings of fact. *Id.* at ¶ 18; **Exhibit B**.

34. The Church timely appealed the Planning Commission's unsupported denial to the Hinds County Board of Supervisors. **Exhibit A** at ¶ 19.

35. The Church was granted a hearing before the Board of Supervisors on January 19, 2021. **Exhibit E**, Minutes of January 19, 2021 Board of Supervisors Meeting.

36. The Board of Supervisors determined at the January 19 Hearing that the appeal had to be tabled and the application sent back to the Planning Commission to make the requisite factual findings on the Church's rezoning application. *See id.*; **Exhibit A** at ¶ 21.

37. After the January 19 hearing, nothing was done for several weeks. Representatives of the Church then made many calls and requests for more information about the status of the matter, but to no avail. **Exhibit A** at ¶¶ 22-23.

38. The Church's calls and requests went unanswered for several weeks. *Id.* at ¶ 24.

39. Eventually, the Planning Commission set the Church's Rezoning Application for another hearing on March 30, 2021. *Id.* at ¶ 25.

40. At the March 30 Hearing, the Church explained, again, that it intended to use the Property as a place of worship for its small congregation. *Id.* at ¶ 26; **Exhibit F**, Minutes of March 30, 2021 Planning Commission meeting.

41. This time around, at the March 30 hearing, the only opposition to the Church's rezoning application was made by two individuals. *Id.*

42. Upon information and belief, the first individual resides more than one and a half miles away from the Property.

43. Upon information and belief, the second person (Attorney Leena El-Sadek) spoke in opposition because her parents, upon information and belief, live about two miles away from the Property.

44. Both of these individuals repeated some of same unsubstantiated allegations made at the November 24 Meeting, namely that this Church will negatively affect their property values and threaten the safety of families. **Exhibit A** at ¶ 30.

45. Attorney Leena El-Sadek went as far as telling the Planning Commission that RLUIPA does not protect Christians because Christianity is not a minority faith in Mississippi and the United States. *Id.* at ¶ 31.

46. The Planning Commission then voted again to deny the Church's rezoning application after finding that "there has not been a change in character of the area to such an extent as to justify reclassification, and that there was not a public need to rezone the property." **Exhibit F**.

47. The Church, again, timely appealed the Planning Commission's decision to the Board of Supervisors which considered the Church's appeal at its meeting on April 19, 2021. **Exhibit A** at ¶ 33; **Exhibit G**, Agenda of Board of Supervisors April 19, 2021 Special Meeting.

48. Without giving the Church's representatives any opportunity to speak, the Board of Supervisors affirmed the Planning Commission's denial. **Exhibit A** at ¶ 34.

49. According to Section 2404 of the Ordinance, the Board of Supervisor's decision is final and can now be challenged in court. **Exhibit C** at p. 101.

50. Without a place of worship, the Church could not serve its religious purpose and the spiritual needs of its congregants to prayer, worship, and study the Bible in accordance with its sincerely the Church's sincerely held religious beliefs. **Exhibit A** at ¶ 35.

51. The Church is now unable to use its Property as place of worship and prevented from exercising its religious liberties. *Id.* at ¶ 36.

52. The Church and its congregants have suffered delay, uncertainty, and expense in their effort to exercise their religious beliefs. *Id.* at ¶ 37.

53. Hinds County has imposed its land use regulations in a manner which has caused the Church to suffer significant delay, uncertainty, aggravation, and inconvenience in efforts to exercise its religious beliefs. *Id.* at ¶ 38.

54. As a result of Hinds County's Zoning Ordinance and the manner in which it has been imposed, the Church has spent significant time, energy, and funds which could have otherwise been spent accomplishing the Church's religious objectives. *Id.* at ¶ 38.

## COUNT I

## VIOLATION OF RLUIPA, 42 U.S.C. § 2000cc(b)(1)
## EQUAL TERMS PROVISION

55. Plaintiff hereby incorporates the allegations in the preceding paragraphs as if each was fully restated herein.

56. Congress enacted RLUIPA in order to provide "very broad protection for religious liberty." *Holt v. Hobbs,* 574 U.S. 352 (2015).

57. The Equal Terms provision of RLUIPA states: "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1).

58. Under RLUIPA's Equal Terms provision, Hinds County is prohibited from treating a religious assembly use less favorably than a nonreligious assembly use.

59. RLUIPA "is less concerned with whether formal differences may be found between religious and non-religious institutions—they almost always can—than with whether, in practical terms, secular and religious institutions are treated equally." *Third Church of Christ, Scientist v. City of N.Y.*, 626 F.3d 667 (2d Cir. 2010).

60. Determining whether a religious assembly is treated on less than equal terms, necessitates a comparison of how a municipality treats a nonreligious or secular assembly use in the same zoning district.

61. To that end, through Sections 500 to 502 of its Ordinance, Hinds County has implemented and imposed a land use regulation that expressly permits the following nonreligious assembly uses within an Agricultural District without providing the same treatment to religious assembly uses:

a. Indoor recreational facilities;

b. Gymnasiums;

c. Arenas; and

d. Other similar facilities.

62. RLUIPA's legislative history specifically identifies recreation centers and gymnasiums as comparable nonreligious assembly uses with which religious assemblies must be treated equally. H. REP. 106-219 at 19 (July 1, 1999).

63. While nonreligious assembly uses are allowed in the Agricultural District as of right, religious assembly uses are not.

64. Sections 501 and 502 facially treat religious assemblies less favorably than nonreligious assemblies.

65. Accordingly, the Ordinance's less favorable treatment of religious assemblies violates RLUIPA's Equal Terms provision.

66. As a direct result of the unequal terms in the Ordinance, which violate the Church's rights under RLUIPA's Equal Terms provision, the Church has suffered, and continues to suffer, irreparable harm to its religious exercise, namely its intended use and conversion of the Property for religious assembly, for which there is no adequate remedy at law.

67. The Church will continue to suffer irreparable damage to the very core of its federally secured freedom if this Court does not declare the Church's right to have its religious assembly treated on equal terms as a permitted use and if Hinds County is not preliminarily and permanently

enjoined from enforcing the Ordinance to prohibit the Church from converting and using the Property for religious assembly.

WHEREFORE the Church is entitled to the relief requested below.

**COUNT II**

**VIOLATION OF RLUIPA, 42 U.S.C. § 2000cc(a)(1)**
**SUBSTANTIAL BURDENS PROVISION**

68. Plaintiff hereby incorporates the allegations in the preceding paragraphs as if each was fully restated herein.

69. Congress provided in Section 2(a)(1) of RLUIPA statutory protections for "religious exercise" as follows:

> "No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution . . . is in furtherance of a compelling government interest [and] is the least restrictive means of furthering that compelling government interest."

42 U.S.C. 2000cc(a)(1).

70. The County has made an "individualized assessment" of the Church's land use within the meaning of 42 U.S.C. 2000cc(a)(2)(C).

71. The County has imposed its land use regulations in a manner which places significant pressure on the Church to forego its religious exercise both at the Property and in the County.

72. The County has implemented or imposed its land use regulations in a manner that prevents the Church from using its Property for religious assembly.

73. The County has implemented or imposed its land use regulations in a manner which provides the Church no alternative locations within the jurisdiction wherein it can locate as a permitted use.

74. The manner in which the County has imposed its land use regulations to deny and restrict the Church's use of the Property is not supported by a compelling governmental interest, nor is it the least restrictive means of furthering any compelling governmental interest.

75. Accordingly, the County has imposed a "substantial burden" on the Church's religious exercise.

76. The County has implemented and imposed its land use regulations in a manner which has placed substantial pressure on the Church and its congregants to modify their behavior and violate their religious beliefs.

77. The County's actions have created considerable expense and uncertainty for the Church and its congregants in their religious use of the Property.

78. The County has imposed its land use regulations in manner which has caused the Church to suffer financial loss.

79. As a direct result of the County's violation of the Church's rights protected under RLUIPA, 42 USC 2000cc(a)(1), the Church is suffering irreparable harm for which there is no adequate remedy at law.

80. Furthermore, as a direct result of the County's violation of the Church's rights under RLUIPA, 42 USC 2000cc(a)(1) as alleged above, the Church is entitled to equitable relief, damages, and the recovery of its costs and attorney fees.

WHEREFORE the Church is entitled to the relief requested below.

## COUNT III

## VIOLATION OF RLUIPA, 42 U.S.C. § 2000cc(b)(3)
## UNREASONABLE LIMITATIONS PROVISION

81. Plaintiff hereby incorporates the allegations in the preceding paragraphs as if each was fully restated herein.

82. Section 2000cc (b)(3) of RLUIPA provides (emphasis supplied):

(3) Exclusions and limits.

No government shall impose or implement a land use regulation that-

(A) totally excludes religious assemblies from a jurisdiction; or

(B) *unreasonably limits* religious assemblies, institutions, or structures within a jurisdiction.

83. The Ordinance unreasonably limits religious assembly uses like the Church by failing to provide any zoning district wherein a religious assembly can locate as of right as a permitted use.

84. Reasonableness is determined in light of all the facts, the economics of the religious organization, and the actual availability of land where the religious organization is permitted to locate.

85. In light of all the facts, the economics of the Church, and the fact that the Ordinance provides no use districts or land within the County wherein the Church could as a permitted use, the Ordinance unreasonably limits religious assemblies within its jurisdiction.

86. It is also an inherently unreasonable limitation on religious institutions like the Church to treat them on unequal terms with nonreligious assembly uses as set forth above.

WHEREFORE the Church is entitled to the relief requested below.

## COUNT IV
## VIOLATION OF THE MISSISSIPPI RELIGIOUS FREEDOM RESTORATION ACT

87. Plaintiff hereby incorporates the allegations in the preceding paragraphs as if each was fully restated herein.

88. The Church's religious exercise is likewise protected by Mississippi's Religious Freedom Restoration Act (RFRA), Miss. Code. Ann. § 11-61-1 (West).

89. Because the County's land use regulations have been implemented or imposed in a manner that substantially burdens the Church's religious exercise, the County bears the burden to show that the imposition of the burden furthers a compelling government interest and is the least restrictive means of furthering that interest.

90. The manner in which the County has imposed its land use regulations to deny and restrict the Church's use of the Property is not supported by a compelling governmental interest, nor is it the least restrictive means of furthering any compelling governmental interest.

91. Accordingly, the County has imposed a "substantial burden" on the Church's religious exercise in violation of Mississippi's RFRA.

92. As a direct result of the County's violation of the Church's rights under the RFRA, the Church is suffering irreparable harm for which there is no adequate remedy at law.

93. Furthermore, as a direct result of the County's violation of the Church's rights under the RFRA as alleged above, the Church is entitled to equitable relief, damages, and the recovery of its costs and attorney fees.

## PRAYER FOR RELIEF

**WHEREFORE**, the Church prays for a judgment against Defendant Hinds County, and respectfully requests that this Honorable Court grant it relief as follows:

a. Adjudge, decree and declare the rights and other legal relations of the parties to the subject matter in controversy in order that such declaration shall have the force and effect of final judgment and that the Court retains jurisdiction of this matter for the purpose of enforcing the Court's Order;

b. Pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, declare that the Church may immediately use the Property for religious assembly purposes;

c. Pursuant to 28 U.S.C. § 2202, Fed. R. Civ. P. 64, 42 U.S.C. § 1983 and 42 U.S.C. § 2000cc-4 preliminarily and permanently enjoin the County from enforcing its land use regulations to prevent the Church from using the Property for religious assembly purposes;

d. Pursuant to 28 U.S.C. § 2202, Fed. R. Civ. P. 65, 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and 42 U.S.C. § 2000cc-2(a), award the Church all necessary and appropriate relief including compensatory and nominal damages;

e. Declare that the County has violated the Church's rights under the aforementioned provisions of RLUIPA, the First and Fourteenth Amendments of the United States Constitution, and Mississippi's RFRA;

f. Pursuant to 42 USC § 1988, 42 USC § 2000cc-2(d), Fed. R. Civ. Pro. 54(d) and other applicable law, award the Church its reasonable attorney fees and costs; and

h. Grant such other and further relief as the Court deems equitable, just and proper.

Respectfully Submitted,

**Dalton & Tomich PLC**

By: /s/ Noel W. Sterett
*Noel W. Sterett (Illinois Bar No. 6292008)
*Lead Attorney for Plaintiff*
*Daniel P. Dalton (MI Bar No. 44056)
*Adel Nucho (MI Bar No. P84139)
The Chrysler House, 719 Griswold Street,
Suite 270, Detroit, MI 48226
Tel. (313) 869-6000
nsterett@daltontomich.com
ddalton@daltontomich.com
anucho@daltontomich.com

**Pro Hac Vice* applications forthcoming

Dated: April 27, 2021

and

Local counsel

**Matthew Wilson**

By: _/s/ Matthew Wilson
Matthew Wilson (MS Bar No. 102344)
Law Office of Matthew Wilson PLLC
P.O. Box 4814
Mississippi State, MS 39762-4814
starkvillelawyer@gmail.com
Telephone (662) 312–5039

Dated: April 27, 2021

**VERIFICATION OF COMPLAINT**

Pursuant to 28 U.S.C. §1746, I, Deacon Gabriel Olivier of The Church at Jackson, declare under penalty of perjury, that I have read and have personal knowledge of the matters contained in this Verified Complaint and that the allegations contained in paragraphs 2, 7-10, 27-29, 31-48, 50-54, 66-67, 71-73, 76-78 are true and accurate.

Executed this 27th day of April, 2021

G. Olivier

By: Gabriel Olivier, as Deacon and authorized representative of The Church at Jackson