UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**THE CHURCH AT JACKSON**                                                              **PLAINTIFF**

**VS.**                                                **CIVIL ACTION NO.:   3:21-CV-298-HTW-LGI**

**HINDS COUNTY, MISSISSIPPI**                                                    **DEFENDANTS**

## ORDER GRANTING PRELIMINARY INJUNCTION

This cause came to be heard on the motion [doc. no. 4] of the Plaintiff, The Church at Jackson, for a Temporary Restraining Order (TRO),[1] or for a Preliminary Injunction.[2] The

---

[1] Rule 65 (b) of the Federal Rules of Civil Procedure governs the granting of a Temporary Restraining Order. It provides as follows:
(b) Temporary Restraining Order.
  (1) *Issuing Without Notice.* The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
    (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
    (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.
  (2) *Contents; Expiration.* Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record. The order expires at the time after entry--not to exceed 14 days--that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. The reasons for an extension must be entered in the record.
  (3) *Expediting the Preliminary-Injunction Hearing.* If the order is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character. At the hearing, the party who obtained the order must proceed with the motion; if the party does not, the court must dissolve the order.
  Fed. R. Civ. P. 65.

[2] Rule 65(a) governs the granting of preliminary injunctions.  It provides as follows:
(a) Preliminary Injunction.
  (1) Notice. The court may issue a preliminary injunction only on notice to the adverse party.
  (2) Consolidating the Hearing with the Trial on the Merits. Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it

1

Defendant, Hinds County, Mississippi, opposes the motion. Plaintiff has also filed a motion for an order directing Defendant to show cause [doc. no. 25] why Defendant should not be held in contempt.  Briefing is now complete on both motions. This court, thereafter, conducted hearings on May 14, 2021, and May 19, 2021, on [doc. no. 4] and on August 31, 2021, on [doc. no. 25].

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff here, the Church at Jackson, is a religious organization seeking injunctive and declaratory relief, which would allow it to build and to use a facility for worship in an area of Hinds, County Mississippi, which area has been zoned by the county as an "Agricultural District."  Certain provisions of the Hinds County zoning ordinance , particularly Sections 501[3]

---

with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial.
Fed. R. Civ. P. 65.

[3] *SECTION 501 - LAND USES PERMITTED*
(a) Single-Family detached dwellings including manufactured homes, modular homes, and relocated structures. Only one principal dwelling per lot may be erected in A Districts, except where the lot consists of six (6) acres or more, in which case up to three (3) single family detached dwellings may be erected per six (6) acres of land.
(b) Accessory buildings and structures, the maximum size of which shall be limited to 50 percent of the area of the main building or 1,000 square feet in area, whichever is smaller.
(c) Pastureland and raising the usual farm animals and poultry subject to the following regulations. This is not to be construed to include the operation of commercial activities otherwise provided in this Ordinance; such as feeding or fattening lots or pens for the purpose of dealing or trading in live stock, fowl, or small domestic animals, such as cats, dogs and rabbits.
(1) Breeding, raising, and feeding of grazing livestock . . . .
(2) Breeding, raising and feeding of swine, provided that pens for the keeping of swine . . . .
(3) Breeding, raising and feeding of chickens, ducks, turkeys, geese, or other fowl, provided that . . .
(d) Forestry and horticultural uses. The sale of vegetables, fruits and other plants shall only be allowed if permitted as a special exception (see *Section 502*).
(e) Public or private recreational or open space facilities, excluding country clubs and the like which shall be regulated as public/quasi-public facilities or utilities subject to the provisions of *Section 414* of this Ordinance.
(f) Seasonal roadside stands for display or sale of agricultural products raised on the premises.
(g) Home occupations in compliance with *Section 416* of this Ordinance.
(h) Farms and farm buildings, as defined in Article II.
(i) Public streets and highways.
(j) Family subdivisions in compliance with *Section 434* of this Ordinance
(omissions under 501 c "Pastureland") (emphasis supplied).

and Section 502[4], prevent or inhibit the ability of Plaintiff to have a church, or to engage in church activities on the property that it owns.  Additionally, says Plaintiff, it has applied for a Special Use Permit under the provisions of the ordinance and has been denied such a permit on more than one occasion by the County Zoning Commission and the Hinds County Board of Supervisors.[5]  The section of the ordinance which includes definitions, Article II Section 201-Definitions, lists "churches and other religious institutions" under the definition of  "Facilities and Utilities, Public/Quasi Public."  Under 501(e), public/quasi-public facilities, including churches, are excluded from the list of permitted uses within the agricultural district.  Section

---

Hinds County Zoning Ordinance Article V Section 501.

[4] SECTION 502 - CONDITIONAL USES AND STRUCTURES AS PROVIDED IN SECTION 2406
(a) Public or quasi-public facilities and utilities in compliance with Section 414 and other regulations of this Ordinance. [Churches and other religious institutions are listed as Facilities and Utilities, Public/Quasi Public under Section 201 of the Zoning Ordinance.]
(b) Day Care Facilities.
(c) Stables and riding academies, provided that there shall be at least one (1) acre of land for each horse normally kept on the premises. In no case shall a stable or riding academy be located on a lot with an area of less than five (5) acres.
(d) Plant nurseries and other horticultural uses where vegetables, fruit and other plants are grown on the premises or brought to the premises and maintained there for the purpose of retail sale from said premises. Such other additional products shall be permitted to be sold from the premises as are customarily incidental to the operation of a plant nursery.
(e) Extraction of minerals, including sand and gravel, provided that when "open-pit" operations are conducted a Reclamation Plan must be approved by the Board of Supervisors as required in Section 201 and all related state laws regarding reclamation should be accommodated.
(f) Veterinary hospitals and kennels.
(g) Animal cemeteries (small domestic animals such as cats and dogs).
(h) Commercial dealing or trading in farm animals or poultry, including such uses as: feed lots, feeding pens, poultry farms, rabbit hutches and similar intensive farming operations.
(i) Roadside stand for the sale of merchandise or products not grown on premises.
(j) Landing strips and agricultural flying services, provided they comply with all regulations of the Federal Aviation Administration.
(k) Convenience grocery stores.
(l) Accessory structures of greater area than that required in Section 501.
(m) Junk yards.
(n) Sanitary Landfill or Dump
Hinds County Zoning Ordinance Article V Section 502.

[5] The authority for the governing body of the county to regulate land use for the unincorporated parts of a county is found at Miss. Code §17-1-3.

502(a) confirms that public and quasi-public facilities, including churches, are not permitted in the Agricultural District unless they obtain a conditional use permit in accordance with Article XXIV Section 2406 of the ordinance.

Plaintiff, therefore, asks this court for injunctive and declaratory relief in accordance with Rules 65[6] and 57[7] of the Federal Rules of Civil Procedure, and asks that bond for this endeavor be waived. Plaintiff seeks to enjoin the county and its officers and agents from enforcing against it the zoning ordinance which prohibits building of church facilities on the church's land zoned as an agricultural district. Plaintiff contends that these sections of the zoning ordinance violate the Religious Land Use and Institutionalized Persons Act (hereinafter "RLUIPA" or "Religious Land Use Act").[8] That Act provides that county or municipal governments shall not impose a land use regulation that unequally treats a religious assembly or institution.

---

[6] See footnotes 1 and 2.

[7] Rule 57. Declaratory Judgment
These rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201. Rules 38 and 39 govern a demand for a jury trial. The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate. The court may order a speedy hearing of a declaratory-judgment action.

Fed. R. Civ. P. 57

[8] The Religious Land Use and Institutionalized Persons Act is codified as 42 U.S.C. §2000cc. The provisions most pertinent to this inquiry are as follows:
(a) Substantial burdens
    (1) General rule
No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution--
    (A) is in furtherance of a compelling governmental interest; and
    (B) is the least restrictive means of furthering that compelling governmental interest.
. . .
(b) Discrimination and exclusion
    (1) Equal terms
No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.
    (2) Nondiscrimination
No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination.

This court last conducted a hearing by video conference on May 14, 2021, and heard oral arguments of counsel on the motion for TRO or Preliminary Injunction and for declaratory relief. After reviewing the briefs and the arguments of counsel, together with the applicable jurisprudence, this court announced its ruling from the bench, granting the relief sought by the Plaintiff in its entirety.

## II. STANDARD FOR PRELIMINARY INJUNCTION

The prerequisites for obtaining a preliminary injunction are well established in the jurisprudence of the Fifth Circuit. The applicant must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that the injunction might cause to the defendant; and (4) that the injunction will not disserve the public interest. *Opulent Life Church v. City of Holly Springs, Miss.,* 697 F. 3d 279, 288 (5th Cir. 2012) (quoting *Tex. Med. Providers Performing Abortion Servs. v. Lakey,* 667 F.3d 570, 574 (5th Cir. 2012)).

## III. ANALYSIS

1. *The Ordinance*

Section 500 of Article V of Hinds County's zoning ordinance establishes the purpose of the "Agricultural District." It provides as follows:

> ARTICLE V
> AGRICULTURAL DISTRICT (A)
> *SECTION 500 - PURPOSE OF THIS DISTRICT*
> The purpose of the Agricultural District (A) is to conserve land for agricultural use, to prevent the premature development of land, and to prevent urban and agricultural land use conflicts. It is the intent of this Ordinance that the Agricultural District (A) be located in rural areas of Hinds County that are not

---

(3) Exclusions and limits
No government shall impose or implement a land use regulation that--
    (A) totally excludes religious assemblies from a jurisdiction; or
    (B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction.
42 U.S.C. § 2000cc

>served by public sewer systems. It is further the intent of this Ordinance to prevent disorderly scattering of residences on small lots and to prevent the establishment of other urban land uses that would require unreasonable expenditure for public roadway and stormwater management improvements and utility and public safety services.

Despite the purposes stated in the above provision, however, Section 501 of the ordinance provides that certain non-agricultural land uses are permitted, including single family detached dwellings, accessory buildings, pasture land and raising of farm animals, forestry and horticultural uses, ***public or private recreational or open space facilities*** (excluding country clubs and the like), seasonal roadside stands, and public streets and highways.

The Church at Jackson contends that under the provisions of Section 501, religious institutions are treated on less than equal terms with other non-religious entities, such as recreational facilities, that are not required to obtain a Special Use Permit. This, says Plaintiff, is exactly the type of situation for which Congress enacted the Religious Land Use Act.

Hinds County contends that public facilities or quasi-public facilities, including religious institutions, are permitted in agricultural districts, so long as they obtain a Special Use Permit. The County also points out that since other religious institutions are currently located in this area zoned for agricultural use, this indicates that religious institutions are not being singled out for discrimination. Finally, the County argues that Plaintiff has not established the criteria for obtaining a preliminary injunction, namely that Plaintiff has not shown a substantial likelihood of success on the merits, that there is substantial threat of irreparable harm if the injunction is not granted, that the threatened injury to Plaintiff outweighs any harm that might result to Defendant, and that the injunction will not disserve the public interest.

2. *The Religious Land Use and Institutionalized Persons Act ("RLUIPA").*

Section 2 of the RLUIPA contains two subsections that limit land use regulations. The first is the subsection containing the "Substantial Burden Clause." That clause "prohibits the imposition or implementation of a land use regulation . . . in a manner that imposes a "substantial burden" on the religious exercise of a person, assembly, or institution unless the government can show that the regulation furthers a "compelling governmental interest" by "the least restrictive means." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 290 (5th Cir. 2012); 42 U.S.C. § 2000cc(a).

The second subsection, and the one at issue in the case *sub judice,* includes the Equal Terms Clause. That clause states: "No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. §2000cc(b)(1

The Fifth Circuit, in *The Elijah Group, Inc. v. The City of Leon Valley, Texas*, read this provision as "prohibiting the government from "imposing," i.e., enacting, a facially discriminatory ordinance or "implementing," i.e., enforcing a facially neutral ordinance in a discriminatory manner." *The Elijah Group, Inc. v. The City of Leon Valley, Texas,* 643 F.3d 419, 422 (5th Cir. 2011).

Plaintiff contends that the ordinance, on its face, treats The Church at Jackson on less than equal terms with a nonreligious assembly or institution. See § 2000cc(b)(1). Before deciding that issue, however, this court, as the Fifth Circuit did in *Opulent Life Church*, must address the RLUIPA's burden-shifting provision. Once a Plaintiff establishes a prima facie case of a violation under RLUIPA, the government shall bear the burden of persuasion, as follows:

> If a plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause or a violation of [Section 2 of RLUIPA], the

7

> government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion.

24 U.S.C. § 2000cc-2(b).

The Fifth Circuit, in *Opulent Life Church*, agreed with the Ninth Circuit holding that a prima facie case for a facial violation of the Equal Terms Clause is established where the ordinance expressly differentiates religious land uses from nonreligious land uses. *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma,* 651 F.3d 1163, 1168–69 (9th Cir.2011) ("the express distinction drawn by the ordinance establishes a prima facie case for unequal treatment"). See also *Opulent Life Church v. City of Holly Springs,* 697 F.3d at 291. The Hinds County ordinance facially treats gymnasiums, recreation centers and places of amusement as permitted land uses that do not require a Special Use Permit, whereas religious assemblies are required to apply for a Special Use Permit.

This court is satisfied that Plaintiff here has established a prima facie case that the Equal Terms Clause has been violated, a development which shifts the burden of persuasion to Hinds County on each element of the Equal Terms claim.

The leading Fifth Circuit case construing the statutory language, "on less than equal terms with a nonreligious assembly or institution," is *Elijah Group, Inc. v. City of Leon Valley*, 643 F.3d 419 (5th Cir. 2011). The Court there said, this statutory language requires that the religious institution in question be compared to a nonreligious 'comparator.' *Id.* In *The Elijah Group* the Fifth Circuit acknowledged that several Circuit Courts of Appeal have adopted various "tests" for assessing ordinances under the Equal Terms Clause of the RLUIPA.

Without adopting any of the tests utilized by other Circuits, the Fifth Circuit concluded that the ordinance provision in the *Elijah Group* case was invalid because it prohibited the

Church from even applying for a Special Use Permit ("SUP") whereas a nonreligious private club could apply for a SUP under various circumstances. The Fifth Circuit held that the Church and a private club must be treated the same by the ordinance, given the similar nature of each. The Court, expounding further, stated, "[a]t bottom, the ordinance treats the Church on terms that are less than equal to the terms on which it treats similarly situated nonreligious institutions. We conclude therefore that the imposition of the City's ordinance violates the RLUIPA's Equal Terms Clause." *Id*. at 424.

The *Elijah* Court discussed the approaches other Circuit Courts had followed, but chose its own distinctive, but similar, approach. *Opulent Life Church v. City of Holly Springs, Miss.,* 697 F.3d 279, 291 (5th Cir. 2012); *Elijah Group*, 643 F.3d at 424. The Fifth Circuit illuminates its evaluative criteria as follows:

> In this circuit, "[t]he 'less than equal terms' must be measured by the ordinance itself and the criteria by which it treats institutions differently." *Id.* … [W]e must determine: (1) the regulatory purpose or zoning criterion behind the regulation at issue, as stated explicitly in the text of the ordinance or regulation; and (2) whether the religious assembly or institution is treated as well as every other nonreligious assembly or institution that is "similarly situated" with respect to the stated purpose or criterion.

*Opulent Life Church v. City of Holly Springs, Miss.,* 697 F.3d 279, 292–93 (5th Cir. 2012).

In the instant case, just as in *Opulent Life Church*,[9] the religious assembly or institution (The Church at Jackson) has established a prima facie case; therefore, the government must

---

[9] In Opulent Life Church, the City of Holly Springs amended its ordinance during the course of the litigation. The Court remanded the case to the district court because the City had not had the opportunity to come forward with the zoning criteria or regulatory objectives that it believed justified the exclusion of religious institutions from the courthouse square under the revised ordinance. That court also left it for the district court, on remand, to determine whether Opulent Life Church would be likely to succeed on the merits of its facial claims against the amended ordinance. *Opulent Life Church v. City of Holly Springs, Miss.,* 697 F.3d 279 (5th Cir. 2012).

affirmatively satisfy the two-part test delineated above, to bear its burden of persuasion on this element of the plaintiff's Equal Terms Clause claim. *Id.,* at 293.

Once Plaintiff has established a prima facie case, it is the burden of the government to prove all the elements of the case and to establish why the treatment should not be deemed unequal. Hinds County has, thus far, failed to do that either in its briefs or in oral argument.

The County has not satisfied the first criterion established by *Opulent Life Church*, in that it could not provide explanation for the regulatory purpose for the zoning criterion behind the regulation, beyond what was stated in Section 500 of the ordinance itself. The County also failed to meet the second criterion in that it could not show that religious institutions (and The Church at Jackson in particular), are treated as well as every other nonreligious assembly or institution that is "similarly situated" with respect to the stated purpose or criterion. The County, thus far, has not explained why excluding religious institutions is related to the objectives of the zoning ordinance or how the existence of religious institutions in the agricultural district is more detrimental to the objectives of the ordinance than recreational facilities.

Asked by this court why recreational facilities are permitted as of right to locate in the agricultural district, but churches are not, the County's response was that the difference is articulated in the language of the zoning ordinance. The purpose of establishing agricultural districts, as stated in the ordinance is to conserve land for agricultural use, prevent premature development of land, and prevent urban and agricultural use conflicts, the County said. The intent of the ordinance, the County stated, was that the agricultural district be located in rural areas of the county that are not served by the public school system. Recreational facilities, the County maintained, do not necessarily lend themselves to premature development of land and do not necessarily contribute to urban and agricultural land use conflicts. Churches, according to

the County, arguably, can promote development of the land and tend to promote urban development, contrary to the purpose of the agricultural district, which is to keep it agricultural.

This court is unpersuaded. The County offered no explanation of how religious facilities promote urban development more than recreational facilities or contribute to urban and agricultural land use conflicts more than recreational facilities. The County, up to this point in the litigation, has fallen far short of meeting its burden of persuasion. Plaintiff then has shown a substantial likelihood of success on the merits, and is entitled to the relief it seeks, provided the other criteria for granting preliminary injunctive relief are met.

*3. Requisites for Injunctive Relief*

This court also must discuss the second requirement for granting a preliminary injunction – a substantial threat of irreparable harm if the injunction is not granted. Following the reasoning of *Opulent Life Church v. City of Holly Springs, Mississippi,* 697 F.3d 279 (5th Cir. 2012), this court recognizes that since there is an 'equal terms' violation of the Act there is a presumption of irreparable harm, as there would be in a free exercise case under the First Amendment.[10] "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). See also 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary").

According to Fifth Circuit in *Opulent Life Church*, this principle applies equally to the violation of RLUIPA rights, because that enactment enforces First Amendment freedoms. *Id.,* at

---

[10] The First Amendment to the United States Constitution provides in its entirety: "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const., Amend. I.

295.  The statute itself provides that it "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. § 2000cc–3(g).   See also *Reaching Hearts Int'l, Inc. v. Prince George's Cnty.*, 584 F.Supp.2d 766, 795 (D.Md.2008) ( "[T]he infringement of one's rights under RLUIPA constitute[s] irreparable injury.") (citing *Elrod*, 427 U.S. at 373)).

The Church at Jackson has been denied its right to its statutorily protected religious exercise for almost a year, and will continue to be denied that right without court intervention. The Plaintiff, therefore, will suffer irreparable harm if the preliminary injunction is not granted.

The court next must examine whether the threatened injury outweighs any harm that the injunction might cause to the defendant Hinds County. The County has not articulated any specific harm that will befall it if the preliminary injunction is granted. It states only that "such a ruling would disrupt the County's legitimate interest in establishing appropriate classifications and locations for special use districts." *Memorandum Brief* [doc. no. 13 at p.4].  In light of the substantial threat of irreparable harm which would befall Plaintiff in the absence of an injunction, this court is persuaded that the balance of harms weighs in favor of the Church at Jackson and of granting the injunction.

Finally, this court addresses whether a preliminary injunction will disserve the public interest.  The Fifth Circuit's holding in *Ingebretsen ex rel. Ingebretsen v. Jackson Pub. Sch. Dist.*, is squarely on point: where a law violates the First Amendment "the public interest was not disserved by an injunction preventing its implementation." *Ingebretsen ex rel. Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir.1996).   As stated in *Opulent Life Church*, "[t]his principle applies equally to injunctions protecting RLUIPA rights because, as discussed, RLUIPA enforces the First Amendment and must be construed broadly." *Opulent Life Church v.*

12

*City of Holly Springs*, 697 F.3d at 298 (5th Cir. 2012). Granting a preliminary injunction in this case will not disserve the public interest.

## IV. CONCLUSION

For all the reasons stated herein, and consistent with this court's bench ruling of May 19, 2021, this court **grants** Plaintiff's motion **[doc. no. 4].**

Hinds County, its officers, agents, employees, attorneys and all other persons acting in concert with it, are preliminarily enjoined from enforcing the zoning Ordinance to prevent, or attempt to prevent, the Church at Jackson from using and converting its Property for religious assembly. The bond requirement is waived.  Since this court is issuing a preliminary injunction, the motion for a Temporary Restraining Order is now moot.  Either party may seek a trial on the merits pursuant to Fed. R. Civ. P. 65.  This court further declares, as a matter of law, that Sections 501 and 502 of the Hinds County Zoning Ordinance treat religious assemblies on less than equal terms with nonreligious assemblies in violation of 42 U.S.C. § 2000cc(b)(1).

Plaintiff also filed a "Motion for an Order to Show Cause Why Defendant Hinds County Should Not Be Held in Civil Contempt for Defying Court's Ruling of May 19, 2021." This court hereby **denies** this motion **[doc. no. 25].**  A hearing was held on this matter on August 31, 2021. All attorneys again appeared by video.  This court does not find that Defendant Hinds County is in contempt of this court's order, since Defendant does not appear to have willfully disobeyed the court's order.  Defendant says it was awaiting the written order of the court and states, additionally, that Plaintiff has not applied for the necessary permit to begin the building process. Although this court does not find Defendant to be in contempt, this court clarifies that Defendant shall receive and process the building permit application of the Plaintiff The Church at Jackson

on equal terms with the non-religious assembly uses permitted as of right in the agricultural district.

SO ORDERED AND ADGUDGED, this the 23rd day of September, 2021.

s / HENRY T. WINGATE<br>UNITED STATES DISTRICT JUDGE